## McAVEY v. EMERGENCY FLEET CORPORATION.

(District Court, D. Massachusetts. November 2, 1926.)

No. 2649.

**1. Pleading ⊜18—Seaman's petition, alleging removal on false, fraudulent, and malicious charges, held bad for indefiniteness and uncertainty.**

Petition by chief engineer of steamer against Emergency Fleet Corporation, alleging his removal on false, fraudulent, and malicious charges, *held* bad for indefiniteness and uncertainty, in not making it clear whether claim was for slander, libel, or malicious prosecution.

**2. Pleading ⊜18.**

Plaintiff must put declaration in reasonably clear and precise form, since defendant is entitled to be clearly informed of general ground on which claim is based.

**3. Pleading ⊜53(1).**

Where more than one ground is relied on, different counts should be inserted in declaration.

**4. Courts ⊜375—Seaman's action against employer for slander and libel in connection with his discharge held barred by state statute of limitations (Gen. Laws Mass. c. 260, § 4).**

Action by chief engineer of steamer against Emergency Fleet Corporation for slander and libel in connection with his discharge *held* barred by Gen. Laws Mass. c. 260, § 4, since in transitory actions state statute of limitations controls in federal courts, where Congress has not provided to contrary.

**5. Limitation of actions ⊜180(1).**

Statute of limitations is affirmative defense, not open on demurrer.

**6. Malicious prosecution ⊜16.**

To maintain action for malicious prosecution, proceeding must have been brought maliciously and without probable cause before judicial tribunal having power to act, and must have terminated in favor of original defendant.

**7. Seamen ⊜12.**

Seaman is bound to vessel for voyage, and vessel must retain him, unless his own good or safety of vessel justify putting him ashore in foreign port.

**8. Seamen ⊜12—Incompetence to perform duties of important position in which he has shipped will justify seaman's discharge abroad.**

Incompetence to perform duties of important position in which he has shipped, and which for safety of vessel, must be capably filled, will justify discharge of seaman abroad.

**9. Seamen ⬅12.**

Master must make any discharge of seaman at foreign port, and must determine whether discharge is justified.

**10. Seamen ⬅12.**

To protect himself, under Comp. St. § 8367, master discharging seaman in foreign port must secure consent of consul.

**11. Seamen ⬅12.**

Consul's action, approving discharge of seaman in foreign port, is not binding on either party, and will not avail master, where obtained by his deceit and collusion.

**12. Seamen ⬅12.**

Consul's action in approving discharge of seaman in foreign port will be regarded as prima facie correct.

**13. Malicious prosecution ⬅35(1)—Proceeding before consul relative to discharge of seaman in foreign port, which resulted adversely to seaman, held not basis for action for malicious prosecution (Comp. St. §§ 8367, 8371).**

Proceeding before consul, who acted under Comp. St. §§ 8367, 8371, relative to discharge of chief engineer of steamer in foreign port, which resulted adversely to such engineer, *held* not basis for action by him against Emergency Fleet Corporation for malicious prosecution.

**14. Seamen ⬅12.**

Seaman, wrongfully discharged in foreign port, can sue and recover whatever damages he sustained, basing action on shipping articles.

At Law. Action by Thomas L. McAvey against the Emergency Fleet Corporation. On demurrer to the declaration. Demurrer sustained.

Herbert E. Dennison, of Boston, Mass., for plaintiff.

Harold P. Williams, U. S. Atty., and Geo. R. Farnum, Asst. U. S. Atty., both of Boston, Mass., for defendant.

MORTON, District Judge. This is a demurrer to a declaration in an action at law. The declaration alleges that the defendant is a corporation organized under the laws of the District of Columbia and maintaining a place of business at Boston; that on May 19, 1921, the plaintiff was employed by it as chief engineer of the steamer Pocahontas, and continued in such employment until her arrival at Gibraltar on or about September 20, 1921; that at said port the defendant "falsely and fraudulently charged the plaintiff with negligence and incompetency in the performance of his duty as chief engineer as aforesaid, and maliciously and without reasonable or probable cause filed with and presented to the American consul at said port of Gibraltar charges against the plaintiff, wherein the de-

fendant by its servants and agents alleged and declared that the plaintiff had been guilty of negligence and incompetency as aforesaid, and demanded and required that because thereof the plaintiff should be discharged and removed from the ship; that by reason of said fraudulent and malicious charges, made against the plaintiff as aforesaid, said American consul did cause the plaintiff to be discharged and removed from said ship; and that, but for such false, fraudulent, and malicious charges, said American consul would not have caused the plaintiff's discharge and removal as aforesaid."

Then follow allegations of consequential damage, relating to a hearing before the board of supervising inspectors, by which the plaintiff was put to loss and expense.

[1-3] The declaration does not make it clear whether the plaintiff's claim is for slander, for libel, or for something akin to malicious prosecution. These are quite different grounds of recovery. The declaration is, in my opinion, bad for indefiniteness and uncertainty. A defendant is entitled to be clearly informed of the general ground on which the claim against him is based, and it devolves upon the plaintiff to put his declaration in reasonably clear and precise form. If more than one ground is relied on, different counts should be inserted. This is sufficient to dispose of the present declaration. But, as the merits have been argued and very carefully considered, it will save the time both of the parties and of the court if I deal with them now.

[4, 5] Slander and libel are clearly barred by the Massachusetts statute of limitations (Gen. Laws Mass. c. 260, § 4), which provides that actions for slander shall be commenced only within two years after the cause of action accrues, and actions for libel only within one year thereafter. In transitory actions, the state statute of limitations controls in the United States courts, where Congress has not provided to the contrary. Michigan Insurance Bank v. Eldred, 130 U. S. 693, 9 S. Ct. 690, 32 L. Ed. 1080. And see American Express Company v. Rowe, 14 F.(2d) 269, C. C. A. 1st, opinion Aug. 17, 1926. Strictly speaking, the statute of limitations is an affirmative defense, not open on demurrer. Miller v. Aldrich, 202 Mass. 109, 88 N. E. 441, 132 Am. St. Rep. 480. See, contra, Jones-Burget v. Borough of Dormont, 14 F.(2d) 954, C. C. A. 3d, Sept. 9, 1926. In order to avoid this technicality, it would be well for the parties to stipulate that questions arising under the statute may be decided on demurrer.

[6] An action for malicious prosecution is

not barred by the statute of limitations. It is on this or some analogous ground, as I construe the present declaration, that the plaintiff puts his case. The question presented is one of considerable difficulty. It is requisite to an action for malicious prosecution that a proceeding shall have been brought maliciously and without probable cause before a judicial tribunal having power to act on some phase of it, at least, and that the proceeding shall have been terminated in favor of the original defendant. See Castro v. De Uriarte (D. C.) 12 F. 250. There is no statute which expressly authorizes consuls to pass upon disputes of this character. Those under which the consul appears to have acted are R. S. § 4580, as amended (U. S. Comp. Stat. 1916, § 8371), which provides that, upon an application of a master or of a seaman, the consul may discharge the seaman, if it appears to him that the seaman has completed his shipping agreement, or is entitled to his discharge under any act of Congress or according to the general principles or usages of maritime law, and R. S. § 4576, as amended (U. S. Comp. Stat. 1916, § 8367), which requires the master of a vessel returning from a foreign voyage to produce to the boarding officer on return to this country all persons listed in the crew, or to account for them, it being expressly provided that as to persons discharged in a foreign country the consent of consul to the discharge shall be certified. R. S. § 4576, originated in the act of 1803; it is referred to in its early form in U. S. v. Parsons, 1 Lowell, 107, Fed. Cas. No. 16,002 (1866).

[7-12] By general maritime law and usage the seaman is bound to the vessel for the voyage for which he signs articles, and the vessel is bound to retain the seaman unless his own good (as in the case of his serious illness, where skilled medical attention is necessary for him), or the safety of the vessel (as where he is violently mutinous and likely to be a source of uncontrollable trouble and danger, if retained on board), justify putting him ashore in a foreign port. Capillo v. Bristol Packing Co. (D. C.) 112 F. 439; The Nimrod, Fed. Cas. No. 10,267; Mattes v. Standard Transp. Co. (D. C.) 274 F. 1019. Incompetence to perform the duties of an important position in which he has shipped, and which for the safety of the vessel must be capably filled, would also justify his discharge abroad. These are questions for the master to decide; he is the one who makes the discharge. The consul does not "cause" a seaman to be dis-

charged, as the declaration alleges, in a case like the present. It is evidently based upon a misunderstanding of the law. When a master discharges a seaman in a foreign port, in order to protect himself under R. S. § 4576, supra, he must secure the consent of the consul to his action. It has been held that the consul's action is not binding on either party, and will not avail the master, where consent to the discharge was obtained by his own deceit or collusion. Mattes v. Standard Transp. Co., supra; Tingle v. Tucker, Fed. Cas. No. 14,057. It has also been held that the consul's action will be regarded as prima facie correct, and will be followed, unless there is persuasive evidence to the contrary. The T. F. Oakes (C. C.) 36 F. 442, 445; Latty v. Emergency Fleet Corporation (D. C.) 279 F. 752.[1]

[13, 14] The Pocahontas was on a foreign voyage, and the proceeding before the consul referred to in the declaration was apparently based on R. S. § 4576, being an application to him for his consent to the discharge of the plaintiff. I think it extremely doubtful whether it constituted a judicial proceeding of such character as to lay the necessary foundation for an action of malicious prosecution. Moreover, the proceeding resulted adversely to the present plaintiff. He is seeking to recover here, not because an unjustifiable complaint was brought against him, but because the consul was misled, as the plaintiff alleges, into an erroneous decision against him. This is the basic difference between the present suit and an ordinary action for malicious prosecution. There are obvious objections to allowing a defeated defendant to bring an independent suit against his successful adversary, based upon the claim that the original action was wrongly decided. Moreover, the present plaintiff's rights rest upon the shipping articles. He still has those rights. If he was wrongfully discharged, he can sue and recover whatever damages he sustained. In my opinion, the declaration states no cause of action for malicious prosecution.

The entry will be, "Demurrer sustained," and the plaintiff, if so advised, may move to amend, so as to present properly the different causes of action now erroneously combined in one count.

---

[1] For discussions of the consul's power and duty, see 16 Ops. Attys. Gen. 268; The Annie (D. C.) 133 F. 325; The Donna Lane (D. C.) 299 F. 977; 22 Ops. Attys. Gen. 212.